## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

MAUREEN STEWART and KELLY          Civil No. 11-5149 (NLH/KMW)
LAMICELLA, individuals, on
behalf of themselves and all
others similarly situated, et          **OPINION**
al.,

        Plaintiffs,

   v.

BEAM GLOBAL SPIRITS & WINE,
INC., et al.,

        Defendants.

_____

**<u>APPEARANCES:</u>**

Barbara Spillman Schweiger, Esquire
David Benjamin Wolfe, Esquire
Evan Andrew Showell, Esquire
Jane J. Felton, Esquire
Skoloff & Wolfe, P.C.
293 Eisenhower Parkway
Livingston, New Jersey 07039
    _Attorneys for Plaintiffs_

John B. Kearney, Esquire
Michael Robert Carroll, Esquire
Ballard Spahr LLP
210 Lake Drive East
Suite 200
Cherry Hill, New Jersey  08002
    _Attorneys for Defendants Beam Global Spirits & Wine, LLC_
    _and Jim Beam Brands Co._

David E. Sellinger, Esquire
Greenberg Traurig LLP
200 Park Avenue
P.O. Box 677
Florham Park, New Jersey 07932
    _and_

Laura D. Castner
Kinsella Weitzman Iser Kump & Aldisert LLP
808 Wilshire Boulevard
3rd Floor
Santa Monica, California 90401
    *Attorneys for Defendant Bethenny Frankel*

Aaron Van Nostrand, Esquire
David E. Sellinger, Esquire
Greenberg Traurig LLP
200 Park Avenue
P.O. Box 677
Florham Park, New Jersey 07932
    *Attorneys for Defendant SGC Global, LLC*

**HILLMAN, District Judge**

    This matter comes before the Court by way of Plaintiffs' motion [Doc. No. 123] for class certification.  Defendants oppose Plaintiffs' motion for class certification.  The Court has considered the parties' submissions, and decides this matter pursuant to Federal Rule of Civil Procedure 78.

    For the reasons expressed below, Plaintiffs' motion for class certification will be denied without prejudice.

## I.    JURISDICTION

    The Court exercises jurisdiction over this putative class action pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act ("CAFA").

## II.    BACKGROUND

    Plaintiffs Maureen Stewart, Kelly Lamicella, and Nicole

Bello bring this putative class action on behalf of themselves and all others similarly situated against Defendants Beam Global Spirits and Wine LLC and Jim Beam Brands Co. (hereinafter, "Beam"), Defendant SGC Global LLC and Skinny Girl Cocktails, LLC (hereinafter, collectively "SGC"), and Defendant Bethenny Frankel (hereinafter, "Frankel").  Plaintiffs essentially allege that despite being marketed and sold as an "all natural" product and a "healthy alternative to other commercial Margarita products[,]" Defendants' low-calorie, pre-mixed alcoholic beverage product known as "Skinnygirl Margarita" does not live up to these claims.  Plaintiffs purportedly purchased Skinnygirl Margarita based on these representations by Defendants in magazine advertisements and on the product packaging. Plaintiffs assert that Defendants' claims are false, deceptive, misleading, and fraudulent.

By way of background, Skinnygirl Margarita "was originally developed by natural foods chef, entrepreneur, and television personality [Defendant] Bethenny Frankel, in conjunction with David Kanbar, [who is not a defendant here], a veteran of the alcoholic beverage industry." (Opp'n of Beam Global Spirits & Wine, Inc. and Jim Beam Brands Co. to Pls.' Mot. for Class

Certification [Doc. No. 155] (hereinafter, "Beam's Opp'n"), 3.)[1]
Frankel and Kanbar subsequently "formed Skinny Girl Cocktails
LLC (now [known as] SGC Global LLC), which began selling
'Skinnygirl Margarita' in certain markets in approximately
August 2009." (Id.)  Nearly two years later, in March of 2011,
Beam "purchased the 'Skinnygirl Margarita' trademark, together
with certain related assets" pursuant to an asset-purchase
agreement.  (Id.)  Since that time, "Beam has marketed and sold"
Skinnygirl Margarita.  (Id. at 4.)

## III. DISCUSSION

### A.  Class Certification

Federal Rule of Civil Procedure 23 permits "[o]ne or more
members of a class [to] sue ... as representative parties on
behalf of all members" of the class.  FED. R. CIV. P. 23(a).
Accordingly, Rule 23 "sets forth a two-pronged standard for
class certification."  Franco v. Conn. Gen. Life Ins. Co., 289
F.R.D. 121, 129 (D.N.J. 2013) (citing FED. R. CIV. P. 23).  "To
obtain certification, a plaintiff must demonstrate that the
putative class meets the threshold requirements of Rule 23(a) as
well as one of the three Rule 23(b) categories under which [the

---

[1]    The Court cites to Beam's opposition solely for purposes of
background information and does not rely on Beam's factual
assertions in resolving the motion for class certification.

plaintiff] wishes to proceed on behalf of a class." Id.; see
also Wal-Mart Stores, Inc. v. Dukes, --- U.S. ---, 131 S. Ct.
2541, 2548-49 (2011)).  On a motion for class certification,
"[i]t is plaintiff's burden to show that a class action is a
proper vehicle for th[e] lawsuit." Hayes v. Wal-Mart Stores,
Inc., 725 F.3d 349, 354 (3d Cir. 2013); see also Comcast Corp.
v. Behrend, --- U.S. ----, 133 S. Ct. 1426, 1432, 185 L.Ed.2d
515 (2013) ("The class action is 'an exception to the usual rule
that litigation is conducted by and on behalf of the individual
named parties only. ... To come within the exception, a party
seeking to maintain a class action 'must affirmatively
demonstrate his compliance' with Rule 23.") (citations omitted).

As the Third Circuit has explained, the "party seeking
class certification must first establish the four requirements
of Rule 23(a): '(1) the class is so numerous that joinder of all
members is impracticable [numerosity]; (2) there are questions
of law or fact common to the class [commonality]; (3) the claims
or defenses of the representative parties are typical of the
claims or defenses of the class [typicality]; and (4) the
representative parties will fairly and adequately protect the
interests of the class [adequacy].'" In re Hydrogen Peroxide
Antitrust Litig., 552 F.3d 305, 309 n.6 (3d Cir. 2008).
"[Class] certification is proper only if the trial court is

satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.  Frequently that rigorous analysis will entail some overlap with the merits of the plaintiff's underlying claim.  That cannot be helped." Hayes, 725 F.3d at 353-54 (citing Dukes, 131 S. Ct. at 2551) (internal quotations omitted).

Where the plaintiff satisfies all four prerequisites under Rule 23(a) - numerosity, commonality, typicality, and adequacy – "a class of one of three types [set forth in Rule 23(b)] (each with additional requirements) may be certified." In re Hydrogen Peroxide, 552 F.3d at 309 n.6.  Plaintiffs in this case seek certification under Rule 23(b)(3). (Br. in Supp. of Pls.' Mot. for Class Certification [Doc. No. 123-1] (hereinafter, "Pls.' Br."), 21.)  A class action may be maintained under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3); see also (Pls.' Br. 21) ("Plaintiffs bring a Rule 23(b)(3) action because common questions predominate over individual ones and a class action is superior to other available methods for fairly and effectively adjudicating the controversy.").

In ruling on the present motion, the Court notes that
"[f]actual determinations supporting Rule 23 findings must be
made by a preponderance of the evidence."  In re Hydrogen
Peroxide, 552 F.3d at 307.  "'A party's assurance to the court
that it intends or plans to meet the requirements is
insufficient.'"  Hayes, 725 F.3d at 354 (citing In re Hydrogen
Peroxide, 552 F.3d at 307).

### B.  Ascertainability of the Class

In recent years, the Third Circuit Court of Appeals has
increasingly emphasized the importance of ascertainability of
the class with respect to classes certified under Rule 23(b)(3)
when examining class certification orders on appeal.  See, e.g.,
Carrera v. Bayer Corp., 727 F.3d 300, 305-08 (3d Cir. 2013);
Hayes, 725 F.3d at 354-56; Marcus v. BMW of N. Am., LLC, 687
F.3d 583, 592-94 (3d Cir. 2012).[2]  Beginning in Marcus, the Third
Circuit recognized that "an essential prerequisite of a class
action, at least with respect to actions [brought] under Rule
23(b)(3), is that the class must be currently and readily
ascertainable based on objective criteria."  Marcus, 687 F.3d at
592-93; see also Hayes, 725 F.3d at 355 ("As 'an essential

---

[2]    In each of these cases, the district court's order
certifying the class was vacated on appeal with respect to the
ascertainability issue and remanded for further proceedings.

prerequisite' to class certification, ... plaintiff must show by a preponderance of the evidence that the class is ascertainable.") (citations omitted); <u>Carrera</u>, 727 F.3d at 306 ("a plaintiff must show, by a preponderance of the evidence, that the class is 'currently and readily ascertainable based on objective criteria,' and a trial court must undertake a rigorous analysis of the evidence to determine if the standard is met.") (citations omitted).

The Third Circuit has determined that several important objectives are served by virtue of the ascertainability requirement for Rule 23(b)(3) class actions: (1) the requirement "eliminates 'serious administrative burdens that are incongruous with the efficiencies expected in a class action' by insisting on the easy identification of class members[;]" (2) the requirement "protects absent class members by facilitating the 'best notice practicable' under Rule 23(c)(2)[;]" and (3) the requirement "protects defendants by ensuring that those persons who will be bound by the final judgment are clearly identifiable." <u>Marcus</u>, 687 F.3d at 593; <u>see also</u> <u>Hayes</u>, 725 F.3d at 355.

Ascertainability thus consists of "two important elements": (1) "the class must be defined with reference to objective criteria[;]" and (2) "there must be a reliable and

administratively feasible mechanism for determining whether
putative class members fall within the class definition."[3]
Hayes, 725 F.3d at 355 (citing Marcus, 687 F.3d at 593-94).
Ascertainability necessitates an inquiry into "whether the
defendants' records can ascertain class members, and if not,
whether there is a reliable, administratively feasible
alternative."[4]   Id. at 594.   The Third Circuit has made clear
that where "class members are impossible to identify without
extensive and individualized fact-finding or 'mini-trials,' then

---

[3]   At least one commentator has observed that
"[a]dministrative feasibility means that identifying class
members is a manageable process that does not require much, if
any, individual factual inquiry."  Hayes, 725 F.3d at 355
(citing William B. Rubenstein, Newberg on Class Actions § 3:3
(5th ed. 2011)).

[4]   In Hayes, the district court "did not see [the defendant's
lack of records identifying potential class members] as a
barrier to class certification, reasoning that plaintiff should
not be hindered from bringing a class action because defendant
lacked certain records."  725 F.3d at 355.  The Third Circuit,
however, reached the opposite conclusion, explaining that "the
nature or thoroughness of a defendant's recordkeeping does not
alter the plaintiff's burden to fulfill Rule 23's requirements."
Id. at 356.  Therefore, in circumstances where a defendant
"lacks records that are necessary to ascertain the class ...
plaintiff must offer some reliable and administratively feasible
alternative that would permit the court to determine" which
individuals fit the definition of the class.  Id.; see id.
("Rule 23's requirements that the class be administratively
feasible to ascertain and sufficiently numerous to warrant class
action treatment cannot be relaxed or adjusted on the basis of
[plaintiff's] assertion that [defendant's] records are of no
help to him.").

a class action is inappropriate."[5]  Marcus, 687 F.3d at 593.

When considering a plaintiff's proposed mechanism for ascertaining the class, the Third Circuit has cautioned "against approving a method that would amount to no more than ascertaining by potential class members' say so[,]" by, for example, "having potential class members submit affidavits" that they meet the class definition.  Marcus, 687 F.3d at 594. Without "further indicia of reliability," permitting such a method would essentially force defendants "to accept as true absent persons' declarations that they are members of the class," raising "serious due process implications."  Id.  A "petition for class certification will founder if the only proof of class membership is the say-so of putative class members or if ascertaining the class requires extensive and individualized fact-finding."  Hayes, 725 F.3d at 356.

**IV.  ANAYLSIS**

In the present motion, Plaintiffs seek certification of the following three classes for consumer fraud, breach of express

---

[5]    In so noting, the court in Marcus identified several cases in which district courts went one step further, holding "that where nothing in company databases shows or could show whether individuals should be included in the proposed class, the class definition fails."  Id. at 593.  The Third Circuit has not extended the reach of Marcus, Hayes, or Carrera to that degree.

warranty and unjust enrichment:[6]

> (1)   A New Jersey Consumer Fraud Act (NJCA) Class consisting of "All persons who, at any time during the Class Period, purchased Skinnygirl Margarita in New Jersey."
>
> (2)   A Breach of Express Warranty Class consisting of "All persons in Alaska, Arizona, California, Colorado, Connecticut, Delaware, D.C., Florida, Georgia, Hawaii, Idaho, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Jersey, New York, North Carolina, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, Washington, West Virginia, and Wisconsin, who, during the Class Period, bought Skinnygirl Margarita."
>
> (3)   An Unjust Enrichment Class consisting of "All persons in Alaska, Arkansas, California, Colorado, Connecticut, D.C., Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Vermont, Virginia, Washington, Wisconsin, and Wyoming who, during the Class Period, purchased Skinnygirl Margarita."[7]

---

[6]   Defendants point out that the proposed Classes defined in the present motion differ from the definition of the Class set forth in Plaintiffs' Second Amended Complaint.  Defendants are correct.  Plaintiffs' Second Amended Complaint defined the class as "[a]ll persons in the United States who purchased Skinny Girl Margarita products from the launch of the product to the date of Plaintiffs' original complaint."  (Pls.' Second Am. Compl. [Doc. No. 70] ¶ 36.)  However, Plaintiffs' Second Amended Complaint expressly "reserve[d] the right to amend the definition of Class members prior to class certification."  (<u>Id.</u>)

[7]   Plaintiffs further specify that "[n]o class shall include

(Pls.' Br. 2-3.)  Plaintiffs define the "Class Period" as the time period beginning with "the launch of the product in approximately August of 2009 [through] September 6, 2011[.]" (Id. at 1.)

Defendants Beam, SGC, and Frankel, however, all separately argue that Plaintiffs cannot satisfy the ascertainability requirement described in Marcus, Hayes, and Carrera based on the proposed Class definitions here.  Initially, as Defendants accurately observe, Plaintiffs' motion for class certification completely fails to address the ascertainability requirement for cases seeking certification pursuant to Rule 23(b)(3), and does not set forth any method or mechanism for ascertaining the proposed Classes.  Recent Third Circuit case law is clear that ascertainability is an "essential prerequisite" to the determination of class certification for Rule 23(b)(3) classes. Carrera, 727 F.3d at 306; Hayes, 725 F.3d at 354; Marcus, 687 F.3d at 592.  As the party moving for certification under Rule 23, the burden rested with Plaintiffs to specifically set forth

---

any defendants, officers/directors/employees of any defendant, any entity in which a defendant has a controlling interest, any affiliate of any defendant, any federal, state or local government entity, any judicial officer presiding over this action and the members of his/her immediate family, judicial staff assigned to this matter, or any juror seated at any trial of this action."  (Pls.' Br. 3 n.1.)

an administratively feasible method for ascertaining the
proposed Classes they seek to certify at the outset.  Plaintiffs
failed to meet that burden in the initial briefing on this
motion.

Arguably, the Court could deny Plaintiffs' motion for class
certification based solely on their failure to address
ascertainability in seeking class certification because
Plaintiffs have not affirmatively demonstrated their compliance
with Rule 23.  See Carrera, 727 F.3d at 307 (explaining that
"[a]scertainability mandates a rigorous approach at the outset
because of the key role it plays as part of a Rule 23(b)(3)
class action lawsuit."); Comcast Corp., 133 S. Ct. at 1432
(recognizing that to come within the exception permitting class
litigation, a party "'must affirmatively demonstrate his
compliance' with Rule 23.") (citation omitted).  Moreover, it
was only after Defendants challenged the ascertainability of the
proposed Classes that Plaintiffs attempted, for the first time
in their reply brief, to suggest a method for ascertaining the
Classes.

Because Plaintiffs failed to propose a mechanism for
ascertaining the Classes until the filing of their reply brief,
Defendants did not have the opportunity to challenge the
specifics of Plaintiffs' proposal.  See Local Civ. R. 7.1(d)(6)

(generally prohibiting the filing of sur-replies).[8]  Nonetheless, this Court concludes that even in the absence of any particularized challenges by Defendants, Plaintiffs' proposed mechanism for ascertaining the Classes here does not satisfy the ascertainability requirement of Rule 23 in accordance with the Third Circuit's rulings in Marcus, Hayes, and Carrera.

### A.   Defendants' Ascertainability Arguments

Beam argues that the "same, if not greater, problems of ascertainability" that caused the Third Circuit to vacate the orders granting "class certification in Carrera and Hayes are present here[.]"  (Beam's Opp'n 33.)  Specifically, Beam represents that "proposed class members cannot be identified from the [D]efendants' sales records; there is no evidence that proposed class members can be identified from retail sales records; the named Plaintiffs themselves have no objective evidence, or even consistent testimony, regarding their own alleged purchases; and the testimony in this and other 'Skinnygirl Margarita' cases demonstrates that consumers may be

---

[8] In light of this Local Rule, courts in this district frequently recognize that "additional arguments [raised] in [a] reply brief" need not be considered given that "such arguments [were] raised without the benefit of opposition."  Goldenberg v. Indel, Inc., 741 F. Supp. 2d 618, 630 n.9 (D.N.J. 2010); see also Bayer AG v. Schein Pharmaceutical, Inc., 129 F. Supp. 2d 705, 716 (D.N.J. 2001).

mistaken and/or untruthful in their sworn statements regarding their own alleged purchases." (Id.)

Beam points out that because it "did not sell directly to consumers" it has "no record of individual sales" of Skinnygirl Margarita. (Id. at 31.) According to Beam, "[a]bsent such records, it would be impossible to determine class membership without significant inquiry[,]" resulting in a mini-hearing on the merits of each case. (Id.) For that reason, Beam contends that Plaintiffs "have failed to make any showing that class membership could be ascertained by any objectively verifiable evidence." (Id.)

SGC similarly represents that it "never actually sold Skinnygirl Margarita to consumers." (Opp'n of Def. SGC Global LLC to Pls.' Mot. for Class Certification [Doc. No. 151] (hereinafter, "SGC's Opp'n") 2.) Apparently, when SGC "owned the brand ... the finished product was actually bottled in Canada and imported and distributed by third parties to retailers with proper licenses" such that "Defendants were several steps removed from the actual retail purchases." (Id.) As a result, SGC asserts that "Defendants do not have, and never had, any record of which consumers bought the product[.]" (Id. at 3.) SGC contends that not only do Defendants "not have any records with ... information for would-be class members," but

15

also that "most of the would-be class members, such as the named Plaintiffs here, have no actual record of their [own] purchases."  (Id. at 4-5.)

SGC argues, therefore, that there is no administratively feasible method to ascertain class membership using objective criteria here "because Defendants do not have (and Plaintiffs do not offer) any objective evidence of who is in the putative class."[9]  (Id. at 7.)

Much like Beam and SGC, Frankel[10] also argues that Plaintiffs have "not shown that class membership could be ascertained by any objectively verifiable evidence," making it "impossible to determine class membership without [engaging in] significant inquiry," rendering "class certification improper" here.  (Bethenny Frankel's Br. in Opp'n to Pls.' Mot. for Class Certification [Doc. No. 158] (hereinafter, "Frankel's Opp'n"), 38.)  Frankel contends that in circumstances like this where "determining class membership would 'essentially require a mini-hearing on the merits of each case,' the putative class

---

[9]   SGC specifically notes that SGC does "not have and [is]not aware, of any objectively verifiable list of retail consumers who have purchased Skinnygirl Margarita."  (Id. at 19.)

[10]   Frankel further "joins in, adopts and incorporates by reference the arguments and evidence regarding ascertainability made by Beam and SGC in their Oppositions to Plaintiffs' Motion."  (Id. at 39 n.14.)

fails[.]"  (Id. at 39.)

**B.  Plaintiffs' Proposed Method to Ascertain the Classes**

In their reply brief, Plaintiffs assert that Defendants have "misconstrue[d] recent precedent regarding ascertainability." (Reply Br. in Further Supp. of Pls.' Mot. for Class Certification, [Doc. No. 165] (hereinafter, "Pls.' Reply") 1.)  Plaintiffs argue that at the certification stage, they "need not ... have ascertained the class or done the work of administering a claim, a process refined after a class is certified with input from all parties." (Id. at 7.)  Rather, Plaintiffs assert that they need only present "[e]videntiary support that the proposed method for ascertaining the class will be successful[.]"  (Id.)  Plaintiffs represent that the "proposed [C]lasses in this case are limited to those [individuals] who purchased Skinnygirl Margarita during the [Class Period] in the states identified" above.  (Id.)  Based on this seemingly objective criteria, Plaintiffs propose a mechanism for ascertaining the Classes which requires that putative class members submit affidavits or attestations regarding their membership in the Classes.  (Id.) (explaining that the prosed Classes "are sufficiently ascertainable through

affidavits and/or attestations[.]").[11]

Although Defendants did not have the opportunity to challenge the specifics of Plaintiffs' proposed mechanism for ascertaining the class, they do generally oppose any method which involves submission of affidavits because such a method amounts to mere reliance on putative class members' "say so."

In this regard, relying on Carrera and Marcus, Beam argues that it cannot "be required to simply accept the self-serving 'say so' of proposed class members" and "must be permitted to exercise its due-process right individually to probe each putative class member's statements regarding their claimed purchase[.]" (Beam's Opp'n 33.) Similarly, SGC contends that "[n]o one can know whether a person is a class member or not until [that person] steps forward ... and tells the story of [his or] her purchases." (SGC's Opp'n 7-8.) This lack of objective evidence leaves only "each individual's own say so"[12] and therefore class certification must be denied. (Id. at 8)

---

[11]   Plaintiffs refer to both affidavits and attestations singularly as affidavits, and the Court similarly does so. (Id. at 7.)

[12]   SGC asserts that this "'say so' level of proof pervades every element of the claims." (Id. at 8.) As SGC points out, Plaintiffs and putative class members "have only their own 'say so' as to whether they bought Skinnygirl Margarita, when they bought it, where they bought it, what they paid for it, and how much they bought." (Id.)

(citing Carrera, 727 F.3d at 306; Marcus, 687 F.3d at 592-93)).
SGC also argues that Defendants have a due process right to
challenge not only the Plaintiffs' claims that they purchased
Skinnygirl Margarita, but also the claims of absent class
members.  (Id.)  SGC asserts that the "only way to ensure
Defendants their due process rights would be to allow
individualized fact-finding and mini-trials as to every single
absent class member's claim, which means that class treatment is
per se inappropriate."  (Id. at 8-9.)  Frankel echoes that
Defendants must "be able to verify a putative class member's
statements regarding his [or her] claimed purchase[.]"
(Frankel's Opp'n 39.)  Frankel argues that the use of affidavits
to ascertain the Classes will force Defendants "to accept
[putative class members'] self-serving 'say so'[][,]" in
violation of Defendants' due process rights.  (Id.) (citations
omitted).

        As a threshold matter, it cannot be overlooked that
Plaintiffs' only suggested method for ascertaining the putative
class members here rests entirely on the submission of
affidavits by individuals who claim that they purchased
Skinnygirl Margarita during the Class Period in the states
identified above.  However, Plaintiffs do not provide any
further detail on precisely what information individuals would

be required to provide in these affidavits such as, for example: (1) dates of purchases of Skinnygirl Margarita; (2) locations and retail establishments where purchases were made; (3) frequency of purchases; (4) quantity of purchases; (5) cost of purchases, etc.  These types of information would be vital to determining whether each putative member fits within the three class definitions in this case.

The Third Circuit has made clear that "ascertainability is important because it 'eliminates serious administrative burdens ... by insisting on the easy identification of class members[.]'" Hayes, 725 F.3d at 355 (citation omitted). Despite this controlling case law, Plaintiffs neglect to identify what information would be included within the affidavits of putative class members, making it virtually impossible for putative class members, Defendants, or the Court to know that this method will result in easy identification of the class members.  Moreover, even assuming that the affidavits sought the information suggested by the Court above, obtaining this information by way of affidavits does not appear to be an effect method for ascertaining the Classes.  Without any independently verifiable proof of purchase through receipts, retail records, or otherwise, the Court finds it unlikely that putative class members will accurately remember every Skinnygirl

Margarita purchase they made during the class period, let alone where these purchases were made and the prices they paid each time.  Given the general inaccuracies of individuals' memories, the submission of affidavits supplying such information would be very likely to invite speculation, or worse, not to mention that this process would result in an extremely burdensome task for the Court or a claims administrator attempting to verify class members' claims.  See Weiner v. Snapple Beverage Corp., No. 07-8742, 2010 WL 3119452, at *13 (S.D.N.Y. Aug. 5, 2010).  Such a method cannot fairly be construed as an administratively feasible one which utilizes objective criteria.  While the proposed class definitions appear to be based on objective criteria, i.e., who made purchases of Skinnygirl Margarita during a specified time frame, Plaintiffs' only proposed method for identifying potential class members relies on the completely subjective information provided by individuals claiming entitlement to class relief.[13]

---

[13]    In the Court's view, this subjective method proposed by Plaintiffs not only raises ascertainability issues but also issue with respect to providing the best practicable notice under the circumstances under Rule 23(c)(2)(B).  If the only manner for identifying class members is submission of subjective affidavits, it appears that the only form of notice the parties could effectuate here would be notice publication, presumably in newspapers and on the internet.  The Court cannot readily discern any way in which the parties could provide some form of individualized notice.

In further support of their proposal, Plaintiffs argue that "[c]ourts routinely accept affidavits [as a method for] ... ascertaining class membership." (Pl.'s Reply 9) (citing cases). The Court disagrees.  Each of the three cases Plaintiffs cite for this premise predate the Third Circuit's 2012 decision in Marcus and the 2013 decisions in Hayes and Carrera, where the Circuit clearly cautioned district courts against approving the use of affidavits to ascertain members of the class.  Moreover, two of the cases cited by Plaintiffs are from district courts outside of the Third Circuit, and neither are binding on this Court.  The third case Plaintiffs cite is the Supreme Court's decision in U.S. v. Rutherford, which Plaintiffs rely on for the proposition that the Supreme Court implicitly approved of the district court accepting affidavits from individuals averring membership in a certified class.  (Pls.' Reply 9) (citing Rutherford, 442 U.S. 544, 549 n.5 (1979)).

Plaintiffs' reliance on Rutherford is misplaced.  As an initial matter, the issue on appeal there was not related to class certification at all, and the Supreme Court did not even address Rule 23's ascertainability requirement.[14]  The only issue

---

[14]    The Supreme Court even noted that the Government did not seek review of the district court's order granting class certification.  Rutherford, 442 U.S. at 549 n.4.

the Supreme Court examined on appeal in Rutherford was "whether
the Federal Food, Drug, and Cosmetic Act preclude[d] terminally
ill cancer patients from obtaining Laetrile, a drug not
recognized as 'safe and effective' within the meaning of ... the
Act[.]"  442 U.S. at 546.  Thus, Rutherford is not binding on
this Court in deciding whether the use of affidavits is
sufficient to ascertain the proposed Classes.  Moreover, any
"implicit approval" of the use of affidavits by the district
court in Rutherford over thirty years ago, cannot be construed
as the equivalent of an explicit determination that affidavits
are generally acceptable as a method of ascertaining class
membership at this time in light of the Third Circuit's recent
rulings.  Accordingly, the Court rejects Plaintiffs' argument
that other courts routinely accept affidavits in order to
ascertain class membership.

Contending that the submission of affidavits by putative
class members is in fact an acceptable method for ascertaining
the Classes, Plaintiffs attempt to distinguish the Third
Circuit's decisions in Marcus, Hayes, and Carrera.  Plaintiffs
claim that these decisions "do not change the ascertainability
of the proposed [C]lasses here."  (Pls.' Reply 10.)  Plaintiffs
argue that Marcus and Hayes are different from the present case
because those cases "were consumer class actions in which the

number of allegedly defective or deceptive products was
unquantifiable." (Id. at 11.) Here, Plaintiffs represent that
various "records have been produced [which] reflect[] the number
of bottles of Skinnygirl Margarita sold by location." (Id.)
The Court is not persuaded by this particular argument.

An accurate reading of Marcus and Hayes makes clear that
the Third Circuit was not concerned about the plaintiff's
inability to quantify the *number* of defective or deceptive
products sold to consumers, but whether there was any way of
ascertaining who class members were, i.e., those individual
consumers who actually purchased the supposedly defective or
deceptive products. Plaintiffs' representation that there are
records indicating the number of bottles of Skinnygirl Margarita
sold by location does nothing to resolve this issue. Plaintiffs
do not demonstrate how a particular retailer record showing that
ABC Liquor Store in DEF Town, GHI State sold X number of bottles
of Skinnygirl Margarita allows for easy identification of actual
consumers who made these purchases – that is - the putative
class members we seek to ascertain. See Marcus, 687 F.3d at 593
(explaining that one of the "important objectives" of the
ascertainability requirement is that is eliminates serious
administrative burdens by "insisting on the easy identification
of class members"); Carrera, 727 F.3d at 307 (noting that

ascertainability "ensures that the parties can identify class members in a manner consistent with the efficiencies of a class action."). Plaintiffs have not shown by a preponderance of the evidence that these records, on their own, allow for easy identification of class members. Thus, Plaintiffs' attempt to distinguish this case from Marcus and Hayes on that basis is insufficient.

However, the most significant obstacle Plaintiffs' must overcome in demonstrating that the submission of affidavits containing unspecified information is an adequate method for ascertaining putative class members is the Third Circuit's explicit rulings in Carrera, Hayes, and Marcus cautioning district courts against "approving a method that would amount to no more than ascertaining by potential class members' say so." Marcus, 687 F.3d at 594.

Beginning in Marcus, the Third Circuit explained that "simply having potential class members submit affidavits that" they satisfy the definition of the class "may not be 'proper or just.'" Id. That is because, in any putative class action law suit, the defendants "will be able to cross-examine" the named plaintiffs at trial regarding their purchases of the defective or deceptive products at issue. Id. However, the defendants will not have such an opportunity with respect absent class

members, and therefore the defendants cannot be forced "to accept as true absent persons' declarations that they are members of the class, without further indicia of reliability[.]" Id.; see also Hayes, 725 F.3d at 354 ("This petition for class certification will founder if the only proof of class membership is the say-so of putative class members[.]"). Neither Marcus, nor Hayes elaborated on what "indicia of reliability" were necessary to quell concerns regarding the defendants' due process rights.

In Carrera, the Third Circuit directly addressed the ascertainability issue and examined the plaintiff's proposed method for ascertaining the class in detail. 727 F.3d at 304, 308-12. There, the plaintiff "advanced two ways to ascertain the class: first, by retailer records of online sales and sales made with store loyalty or rewards cards; second, by affidavits of class members, attesting they purchased WeightSmart and stating the amount they purchased."[15]  Id. at 304. When the defendants challenged the plaintiff's proposed method as inadequate, the plaintiff produced a declaration from an individual who worked "for a company that verifies and processes

---

[15]   WeightSmart, the product at issue in Carrera, was a multivitamin and dietary supplement promoted as having metabolism-enhancing effects.  727 F.3d at 304.

26

class settlement claims" wherein this individual "stated that there are ways to verify the types of affidavits at issue and screen out fraudulent claims."  Id.

The district court accepted the plaintiff's proposed method and certified the class, characterizing "the issue of ascertainability as one of manageability, stating '"speculative problems with case management"' are insufficient to prevent class certification."  Id. (citations omitted).  The defendants appealed, arguing that the plaintiff "failed to demonstrate the class is ascertainable because there [was] no evidence that any retailer records show who purchased WeightSmart" and that "the use of affidavits to ascertain class members fails to comply with Rule 23 and violate[d] [their] rights under the due process clause."  Id. at 305.

On appeal, the Third Circuit identified "the ascertainability question [as] whether each class member purchased WeightSmart in Florida[,]" and explained that "[a]scertainability provides due process by requiring that a defendant be able to test the reliability of the evidence submitted to prove class membership."  Id. at 307.  Therefore, "to satisfy ascertainability as it relates to proof of class membership, the plaintiff must demonstrate his purported method for ascertaining class members is reliable and administratively

27

feasible, and permits a defendant to challenge the evidence used to prove class membership." Id. at 308.  The Circuit then proceeded to examine the plaintiff's two proposed methods for ascertaining the class, and concluded that neither of the methods, including the submission of affidavits by class members attesting to their purchases of WeightSmart, satisfied the plaintiff's burden on Rule 23 to show the class was ascertainable.  Id.

With respect to the use of retailer records, which Plaintiffs similarly suggest the use of here, the Third Circuit found that the "evidence put forth by [the plaintiff] [was] insufficient to show that retailer records in [Carrera] [could] be used to identify class members." Id. at 308.  The Circuit explicitly noted there was "no evidence that a single purchaser of WeightSmart could be identified using the" suggested retailer records.  The Court's review of the retailer records provided by Plaintiffs in this particular case requires a finding consistent with Carrera.  Much like that case, there is nothing in the records produced to the Court that suggests any manner by which the parties can identify the specific individuals, i.e., the putative class members, who purchased Skinnygirl Margarita at these various retail locations.  Moreover, Plaintiffs do not provide any evidence, nor do they even argue, that these records

can in fact lead to the identities of specific class members.
Plaintiffs simply offer these records because they "reflect[]
the number of bottles of Skinnygirl Margarita sold by location."
(Pls.' Reply 11.)  Therefore, to the extent Plaintiffs contend
these retailer records can be used to ascertain the proposed
Classes, the Court rejects such a proposal as insufficient under
Rule 23.

On the issue of the use of affidavits, the Third Circuit in
Carrera was clear.  First, even assuming it was true that the
low value of the claims made it unlikely someone would fabricate
a claim, the Circuit concluded that the use of affidavits still
failed to address "a core concern of ascertainability: that a
defendant must be able to challenge class membership."  Carrera,
727 F.3d at 309.  The Circuit further pointed out that this was
"especially true where the named plaintiff's deposition
testimony suggested that individuals will have difficulty
accurately recalling their purchases of WeightSmart."[16]

---

[16]    The named plaintiff in Carrera "was unable to remember when
he purchased WeightSmart and confused WeightSmart with other
products that are not part of th[e] litigation."  Id. at 309
n.5.  The fact that the named plaintiff in Carrera was not able
to accurately remember his purchases of WeightSmart only serves
to heighten the Court's concern, expressed supra, that putative
class members here would also have difficulties accurately
recalling their purchases of Skinnygirl Margarita.  Additional,
Defendants point out a number of inconsistencies in the
testimony of the named Plaintiffs in this case regarding their

Importantly, in <u>Carrera</u>, the Circuit emphasized that the ascertainability requirement not only protects the defendants, but also "protects absent class members[,]" explaining that it is "unfair to absent class members if there is a significant likelihood their recovery will be diluted by fraudulent or inaccurate claims." <u>Id.</u> at 310.

Particularly relevant in this case, the plaintiff in <u>Carrera</u> also argued that "a screening method such as the one" proposed in the declaration of a class action settlement claims administrator would "ensure that [the defendants] pay[] claims based only on reliable affidavits." <u>Id.</u> at 310-11. The proposed screening method suggested by the administrator included running "programmatic audits to identify duplicate claims, outliers and other situations[,]" and the use of various "fraud prevention techniques" where claim forms offer "options that do not reflect valid product descriptions, prices paid, geographic locations or combinations of such factors." <u>Id.</u> at 311. The Third Circuit explicitly rejected the administrator's declaration concluding that it did not sufficiently "show the affidavits will be reliable." <u>Id.</u>

The Circuit further found that not only did the declaration

_____

own purchases, only emphasizing the Court's concern.

not "propose a model for screening claims that is specific to
this case[,]" but that even if it did, the Circuit "doubt[ed]
whether it would satisfy the ascertainability requirement." Id.
The court in Carrera expressed concern that at this stage of the
ligation, the district court "will not actually see the
[proposed] model in action" but instead will only be "told how
the model will operate with the plaintiff's assurances it will
be effective." Id. "Such assurances that a party 'intends or
plans to meet the requirements' are insufficient to satisfy Rule
23." Id. Accordingly, the Third Circuit vacated the district
court's order granting class certification and remanded the case
in order for the plaintiff to "submit a screening model specific
to [that] case and prove how the model will be reliable and how
it would allow [the defendants] to challenge the affidavits",
again noting that mere assurance the model "can screen out
unreliable affidavits" was not adequate. Id. at 311-12.

Plaintiffs argue that the holding in Carrera[17] is not, as

---

[17]    Plaintiffs' reply brief notes that Carrera "is the subject
of a petition for rehearing and rehearing en banc[.]" (Pls.'
Reply 13.)  Plaintiffs therefore request that "[i]f this Court
is inclined to believe Carrera precludes a finding of
ascertainability in this case, it should, in the interest of
justice, stay its decision until the Third Circuit" rules on the
petition for rehearing.
After Plaintiffs submitted their reply, the Third Circuit
denied the petition for a panel rehearing and for rehearing en
banc on May 2, 2014. Accordingly, Carrera remains binding

Defendants suggest, "that affidavits from class members can never be a principal method for ascertaining class membership[.]"[18]  (Pls.' Reply 11.)  Rather, Plaintiffs assert that "Carrera did not reject the concept of screening by a claims administrator generally, but demanded that [a] more reliable screening process be applied where the product at issue could be easily confused with others products in the market." (Id. at 12.)  In that vein, Plaintiffs contend that they have "set forth methods for the screening of affidavits by a qualified claims administrator, which would provide [the] 'further indicia of reliability'" necessary for their proposed method to meet the Rule 23 ascertainability requirement.  (Id. at 11.)

    According to Plaintiffs, the affidavits submitted in this matter would "have added indicia of reliability derived from screening mechanisms ... [which] include cross-referencing affiants with both presently available records of consumers, and records identifying those who have like Defendants' social media

---

precedent in this Circuit and the Plaintiffs' request for a stay is moot.

[18]    Plaintiff assert that if that were the holding in Carrera, "it would be the end of consumer class actions holding manufacturers responsible for falsely advertising goods for which sales records are not kept."  (Id.)

pages and/or commented about Skinnygirl Margarita on Defendants'
internet sites." (Id. at 7.)  Plaintiffs represent that there
are "thousands of consumers who communicated their purchases to
Defendants and on social media during the class period, and
plentiful records to identify (as well as notify) them."  (Id.)
These records purportedly include the Facebook pages of
Skinnygirl Cocktails and Frankel, which together have over 1.8
million fans, or "likes" on the social media website.  (Id. at
7-8.)

Plaintiffs argue that the "ability to identify fans online
and cross-check affidavits with Facebook information ...
bolster[s] the reliability of sworn affidavits." (Id. at 8.)
Plaintiffs even direct the Court to specific Facebook comments
on these pages where individuals specifically indicated that
they had purchased a particular number of bottles of Skinnygirl
Margarita. (Id.)  Plaintiffs further assert that the sworn
affidavits can similarly be cross-checked against Defendants'
consumer e-mail records, which, Plaintiffs suggest makes the
affidavits sufficiently reliable. (Id.)  Plaintiffs represent
that there are "thousands of pages" of e-mails consumers sent
directly to Defendants from which the identities of numerous
class members could be determined. (Id.)

Plaintiffs further suggest that with respect to those

putative class members who did not "like" Defendants' Facebook
pages or e-mail Defendants directly about the product, an
independent claims administrator would be able to screen these
affidavits by other methods.  (Id. at 8-9.)  Plaintiffs identify
the following "other methods" for screening affidavits that
cannot be cross-checked: "the use of proven algorithms to
identify fraudulent claims based on data and behavioral patterns
tailored to this case; verification of prices paid and
geographic retail locations, which will be cross-checked against
information obtained in discovery relating to, among other
things, the identity of retailers and average prices paid; and
obtaining from affiants information regarding packaging and
method of purchase (in-store or online) to detect fraud and/or
inaccuracy."  (Id. at 9.)  In support of this argument and these
proposed screening methods, Plaintiffs cite to the Declaration
of Steven Weisbrot, a class action administrator, which was
previously submitted on a motion for class certification in the
matter of Ebin v. Kangadis Food Inc., 297 F.R.D. 561, 567
(S.D.N.Y. 2013).[19]

---

[19]    In Ebin, "[t]he class and subclasses consist[ed] of persons
in the United States who purchased Capatriti [100% Pure Olive
Oil which allegedly contained an industrially processed
substance known as olive-pomace oil] packed before March 1,
2013[.]" 297 F.R.D. at 567.

In considering the various arguments raised by Plaintiffs regarding "indicia of reliability" sufficient to permit the submission of affidavits from putative class members, the Court must bear in mind that Defendants have not had the opportunity to specifically challenge any of these indicia of reliability. Having thoroughly reviewed Plaintiffs' proposed method for ascertaining the class and the suggested indicia of reliability, the Court finds that Plaintiffs have not proved by a preponderance of the evidence that the Classes are currently and readily ascertainable based on objective criteria, and therefore the Court cannot grant class certification at this time.

Despite Plaintiffs attempts to argue otherwise, the rulings in Marcus, Hayes, and Carrera make clear that relying on affidavits of putative class members to as the primary method of ascertaining the members of the class is not a prudent course of action for a district court and is generally insufficient to meet the requirements of Rule 23.  Such affidavits essentially amount to nothing more than reliance on the subjective "say so" of the putative members that they meet the class definition and are entitled to relief, and practically ignores the need for a class definition based on objective criteria.  This process leaves Defendants without a suitable and fair method for challenging these individuals' purported membership in the class

35

- a right the Third Circuit has clearly stated Defendants are absolutely entitled to.

Further, the Court is not persuaded that any of Plaintiffs' suggested indicia of reliability can satisfactorily alleviate the concerns the Third Circuit has set forth regarding the use of affidavits for ascertaining class membership.  Plaintiffs' suggestion that affidavits submitted by putative class members could be cross-checked for reliability against the known identities of individuals who have "liked" Defendants' Facebook pages, commented about Skinnygirl Margarita on social media and contacted Defendants directly through e-mail is unpersuasive. Plaintiffs have not presented any statistical evidence demonstrating what percentage of consumers who purchased Skinnygirl Margarita were likely to either e-mail Defendants directly or contact (or "like") Defendants through Facebook. Thus, upon submission of affidavits from putative class members, there is no way for the Court to know how effective this supposed "cross-checking" will be in screening out fraudulent claims.  At best, it appears this cross-checking can only be used to screen a modest percentage of the affidavits that would be submitted.

Significantly, Plaintiffs readily admit that some of the individuals who have "liked" Defendants' Facebook pages "may not

[even] be class members[.]" (Pls.' Reply at 8.)  The inherent
problem with Plaintiffs' suggested use of "cross-checking"
social media and e-mail records is that such Facebook and e-mail
records, admittedly, only identify some unknown, unspecified
portion of the putative class and may very well include
individuals who never bought the product and in fact are not
members of the class.  There is simply no way for the Court to
know that such a method will actually work, and Plaintiffs have
done nothing but provide "mere assurances" that it will.  Much
like the district court in <u>Carrera</u>, the Court here will not see
this method in action but is only being told how it will operate
with Plaintiffs' assurances it will be effective.  These
assurances, have not yet been challenged by Defendants and
cannot be accepted by the Court in order to satisfy Rule 23.
Accordingly, the Court finds this manner of cross-checking is
not sufficiently reliable.

     In a related context, the Court similarly finds Plaintiffs'
suggestion that an independent claims administrator would be
able to screen the affidavits of class members who did not
"like" Defendant's Facebook pages or e-mail Defendants through
"other methods" is unconvincing.  Plaintiffs' rely solely on the
Weisbrot Declaration submitted in <u>Ebin</u>.  The Third Circuit's
ruling in <u>Carrera</u> put Plaintiffs on notice that any proposed

method for screening affidavits would need to be specific to
this case.  727 F.3d at 311.  Accordingly, the Court cannot
accept the proposed methods outlined in the Weisbrot
Declaration, which was submitted in a different case before a
different district court, in order to conclude that these
methods will add the necessary indicia of reliability to
affidavits submitted here.  The Weisbrot Declaration was made
specifically with respect to the claims in Ebin.  The methods
proposed there were not created, developed or described with the
facts of this particular case in mind, and therefore the Court
must reject Plaintiffs' reliance on that Declaration.

        Even if the Court could properly accept and consider the
Weisbrot Declaration here, there are two other relevant
considerations with respect to the use of that Declaration in
Ebin.  First, the district court in Ebin explicitly noted that
"[t]he process described by class action administrator Steven
Weisbrot to identify class members [here] is very similar to the
process found inadequate in" Weiner v. Snapple Beverage Corp.,
No. 07-CV-8742, 2010 WL 3119452, at *12-13 (S.D.N.Y. Aug. 5,
2010), a case decided by another court in the same district, and
"raise[d] concerns" with respect to ascertainability of the

38

class.  <u>Ebin</u>, 397 F.R.D. at 567.  Ultimately, because <u>Snapple</u>[20]
was not binding and because the Second Circuit disfavored
denying certification of a Rule 23(b)(3) class "on the sole
ground that it would be unmanageable[,]" the district court in
<u>Ebin</u> concluded that <u>Snapple</u> went further than that court was
prepared to go.  <u>Id.</u>  Concerned that adopting the reasoning of
<u>Snapple</u> would "render class actions against producers almost
impossible to bring[,]" the court in <u>Ebin</u> concluded that the
"ascertainability difficulties, while formidable, should not be
made into a device for defeating the action."  <u>Id.</u>  Thus, while
the methods proposed in the Weisbrot Declaration were ultimately
permitted in <u>Ebin</u> and class certification was granted, the court
had significant concerns about the effectiveness of these
methods.

Second, it is also clear from <u>Ebin</u> that the Second Circuit
"has instructed that 'failure to certify an action under Rule
23(b)(3) on the sole ground that it would be unmanageable is

---

[20]  In <u>Snapple</u>, the plaintiffs sought certification for claims
of a violation of New York General Business Law § 349, unjust
enrichment, and breach of warranties, alleging that they paid a
premium for Snapple based on its allegedly misleading "All
Natural" label. 2010 WL 3119452 at *2.  The court denied
certification on the issue of ascertainability of the class, in
part because the court found that the submission of declarations
would be unreliable since putative class members were not likely
to remember details of their Snapple purchases.  <u>Id.</u> at *12-13.

disfavored and should be the exception rather than the rule.'" 297 F.R.D. at 567 (citing In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 140 (2d Cir. 2001)).  This Court, however, is bound by the rulings of the Third Circuit in Marcus, Hayes, and Carrera which appear to impose a far more exacting standard for ascertainability than that required by the Second Circuit.

Accordingly, for the reasons set forth above, the Court finds that Plaintiffs have not met their burden to demonstrate ascertainability of the proposed Classes in accordance with Rule 23.  Therefore, class certification must be denied at this time. However, this denial will be without prejudice to Plaintiffs' rights to renew their motion for class certification at any appropriate time in the future, specifically taking into account the rulings in Marcus, Hayes, and Carrera.

The Court notes that Defendants also challenge Plaintiffs' ability to satisfy the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), as well as the predominance and superiority inquires necessitated by Rule 23(b)(3).  The Court need not address these issues at this time in light of its finding that the proposed Classes are not ascertainable, given that ascertainability of the class is a threshold issue the Court must address before moving to the requirements of Rule 23(a) and 23(b)(3).  See, e.g., Hayes, 725 F.3d at 359

(declining to "reach the question of whether [plaintiff] could satisfy Rule 23(b)(3) predominance" because "ascertaining the class is logically antecedent to determining whether issues common to the class predominate over individuals issues"); <u>Sethavanish v. ZonePerfect Nutrition Co.</u>, No. 12-2907-SC, 2014 WL 580696, *2 n.3 (N.D. Cal. Feb. 13, 2014) (declining to address defendant's arguments that typicality, adequacy, and predominance were lacking where court found proposed class was not ascertainable).

## V.    <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiffs' motion [Doc. No. 123] for class certification is denied without prejudice. An Order consistent with this Opinion will be entered.


Date: <u>  June 26, 2014  </u>              <u>  s/ Noel L. Hillman  </u>
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.