UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

MAUREEN STEWART, KELLY LAMICELLA,
and NICOLE BELLO, individuals,
on behalf of themselves and all          Civil No. 11-5149 (NLH/KMW)
others similarly situated,

        Plaintiffs,          **OPINION**

v.

BEAM GLOBAL SPIRITS & WINE,
INC., et al.,

        Defendants.
_____


**APPEARANCES:**

Barbara Spillman Schweiger, Esquire
David Benjamin Wolfe, Esquire
Evan Andrew Showell, Esquire
Jane J. Felton, Esquire
Skoloff & Wolfe, P.C.
293 Eisenhower Parkway
Livingston, New Jersey 07039

    *Attorneys for Plaintiff*

John B. Kearney, Esquire
Michael Robert Carroll, Esquire
Ballard Spahr LLP
210 Lake Drive East
Suite 200
Cherry Hill, New Jersey 08002

    *Attorneys for Defendants Beam Global Spirits & Wine, Inc.*
    *And Jim Beam Brands Co.*

Aaron Van Nostrand, Esquire
David E. Sellinger, Esquire
Greenberg Traurig LLP
200 Park Avenue
P.O. Box 677
Florham Park, New Jersey 07932

    *Attorneys for Defendant SGC Global, L.L.C. and Skinny*
    *Girl Cocktails, L.L.C.*

David E. Sellinger, Esquire
Greenberg Traurig LLP
200 Park Avenue
P.O. Box 677
Florham Park, New Jersey 07932-0677

    *and*

Laura D. Castner, Esquire
Kinsella Weitzman Iser Kump & Aldisert LLP
808 Wilshire Boulevard
3rd Floor
Santa Monica, California 90401

    *Attorneys for Defendant Bethenny Frankel*

**HILLMAN, District Judge:**

    Presently before the Court in this putative class action is the renewed motion [Doc. No. 199] for class certification filed by Plaintiffs Maureen Stewart, Kelly Lamicella, and Nicole Belo.[1] Plaintiffs previously filed a motion for class certification, which the Court denied without prejudice based upon Plaintiffs' failure to demonstrate the ascertainability of the proposed classes in accordance with Rule 23 of the Federal Rules of Civil Procedure and recent Third Circuit case law.  In their renewed

---

[1] Ms. Belo's name is incorrectly spelled "Bello" in the caption of the complaint.

2

motion, Plaintiffs have attempted to address the issues identified in the Court's prior opinion and order on class certification.  Defendants, Beam Global Spirits and Wine LLC and Jim Beam Brands Co. (hereafter, collectively "Beam"), SGC Global LLC and Skinny Girl Cocktails, LLC (hereafter, collectively "SGC")[2] and Bethenny Frankel (hereafter, "Frankel"), have all opposed Plaintiffs' renewed motion.

The Court has considered the parties' submissions and decides this matter pursuant to Federal Rule of Civil Procedure 78.  For the reasons that follow, Plaintiffs' renewed motion for class certification is denied.

## I.   <u>JURISDICTION</u>

The Court exercises jurisdiction over this putative class action pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act ("CAFA").

---

[2] The SGC Defendants note that in or around March 2011, Skinny Girl Cocktails LLC changed its name to SGC Global LLC, and there is now just one entity known as SGC Global LLC.  Because the second amended complaint has not been amended to reflect this change, the Court continues to refer to the named defendants, Skinny Girl Cocktails, LLC and SGC Global LLC, collectively as the "SGC Defendants."  (Opp. of Def. SGC Global LLC (Erroneously Sued as SGC Global, L.L.C. and Skinny Girl Cocktails, L.L.C.) to Pls.' Renewed Mot. for Class Certification [Doc. No. 205], at 5 n.2.)

## II.  <u>BACKGROUND</u>

The background of this case was set forth in the Court's Opinion [Doc. No. 187] dated June 26, 2014.  Plaintiffs generally allege in this action that Defendants market and sell a beverage product called "Skinnygirl Margarita," which they represent is an "all natural" product which "uses only natural ingredients[,]" even though the product contains sodium benzoate.  (Second Am. Compl. ¶ 2.)  According to Plaintiffs, "Defendants undertook an extensive media campaign promoting Skinny Girl . . . [as] a healthy alternative to other commercial Margarita products presently available[,]" but the product purportedly does not live up to these claims.  (<u>Id.</u>)  Plaintiffs allege that they purchased Skinnygirl Margarita based on these representations by Defendants, which were made in advertisements and on the product packaging.  (<u>Id.</u> ¶ 3.)  Plaintiffs further assert that Defendants' claims are false, deceptive, and misleading.  (<u>Id.</u>)

Following discovery, Plaintiffs filed a motion seeking certification of the following three classes:

> (1)     A New Jersey Consumer Fraud Act ("NJCFA") Class consisting of "All persons who, at any time during the Class Period, purchased Skinnygirl Margarita in New Jersey."

> (2)     A Breach of Express Warranty Class consisting of "All persons in Alaska, Arizona, California, Colorado, Connecticut, Delaware, D.C., Florida, Georgia, Hawaii,

Idaho, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Jersey, New York, North Carolina, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, Washington, West Virginia, and Wisconsin, who, during the Class Period, bought Skinnygirl Margarita."

(3)     An Unjust Enrichment Class consisting of "All persons in Alaska, Arkansas, California, Colorado, Connecticut, D.C., Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Vermont, Virginia, Washington, Wisconsin, and Wyoming who, during the Class Period, purchased Skinnygirl Margarita."[3]

(Br. in Supp. of Pls.' Mot. for Class Certification [Doc. No. 123-1] 2-3.)  Plaintiffs defined the "Class Period" as the time period beginning with "the launch of the product in approximately August of 2009 [through] September 6, 2011."  (Id. at 1.)

_____

[3]     Plaintiffs further specified that "[n]o class shall include any defendants, officers/directors/employees of any defendant, any entity in which a defendant has a controlling interest, any affiliate of any defendant, any federal, state or local government entity, any judicial officer presiding over this action and the members of his/her immediate family, judicial staff assigned to this matter, or any juror seated at any trial of this action."  (Br. in Supp. of Pls.' Mot. for Class Certification [Doc. No. 123-1] 3 n.1.)

Defendants Beam, SGC and Frankel all opposed Plaintiffs'
first motion for class certification, arguing that Plaintiffs
could not satisfy the ascertainability requirement described in
recent Third Circuit case law.  Plaintiffs attempted to address
the issue in their reply brief, but the Court concluded that the
methodology proposed by Plaintiffs for ascertaining the Classes
did not satisfy the ascertainability requirement.  Accordingly,
the Court denied Plaintiffs' motion for class certification,
without prejudice to Plaintiffs' ability to file a renewed
motion for class certification in accordance with Third Circuit
case law.  Plaintiffs then filed the instant motion.

III. **LEGAL STANDARD**

    **A.   Rule 23**

In order to qualify for class certification under Federal
Rule of Civil Procedure 23, a plaintiff must satisfy the four
elements set forth in Rule 23(a), as well as the requirements of
one of the three subsections in Rule 23(b).  Wal-Mart Stores,
Inc. v. Dukes, , --- U.S. ---, 131 S. Ct. 2541, 2548-49, 180 L.
Ed. 2d 374 (2011).  Rule 23(a) contains the prerequisites for a
class, providing that class certification is proper if:

    (1)  the class is so numerous that joinder of all members
        is impracticable;

    (2)  there are questions of law or fact common to the
        class;

      (3)   the claims or defenses of the representative parties
            are typical of the claims or defenses of the class;
            and

      (4)   the representative parties will fairly and adequately
            protect the interests of the class.

Fed. R. Civ. P. 23(a).  "[Class] certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'"  <u>Hayes v. Wal-Mart Stores, Inc.</u>, 725 F.3d 349, 353-54 (3d Cir. 2013) (quoting <u>Dukes</u>, 131 S. Ct. at 2551).

Once a plaintiff satisfies all four prerequisites under Rule 23(a), Rule 23(b) then identifies the types of class actions that can be brought.  Plaintiffs in this case seek certification pursuant to Rule 23(b)(3), which provides that a class may be certified if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The matters pertinent to these findings include:

      (A)   the class members' interests in individually
            controlling the prosecution or defense of separate
            actions;

      (B)   the extent and nature of any litigation concerning the
            controversy already begun by or against class members;

      (C)   the desirability or undesirability of concentrating
            the litigation of the claims in the particular forum;
            and

(D)  the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

The party moving for class certification bears the burden of demonstrating that the requirements of Rule 23 are met by a preponderance of the evidence.  Hayes, 725 F.3d at 354; see also Comcast Corp. v. Behrend, --- U.S. ---, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013)("The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'  To come within the exception, a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23.")(internal citations omitted).  "A party's assurance to the court that it intends or plans to meet the requirements is insufficient." In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 318 (3d Cir. 2008).  "'Class certification is proper only 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met.'" Carrera v. Bayer Corp., 727 F.3d 300, 306 (3d Cir. 2013) (quoting Hydrogen Peroxide, 552 F.3d at 309).

**B.  Ascertainability of the Class**

Before turning to the express requirements of Rule 23, courts must address the ascertainability of a class as a "preliminary" or "implied" requirement of class certification

when a class action is brought under Rule 23(b)(3).  Byrd v. Aaron's Inc., 784 F.3d 154, 162 n.5 (3d Cir. 2015); Carrera, 727 F.3d at 305 (quoting Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 591 (3d Cir. 2012)).  "Many courts and commentators have recognized that an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria."  Marcus, 687 F.3d at 592-93 (citations omitted).  "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate."  Id. at 593.

The Third Circuit, in Carrera, explained that the ascertainability requirement serves several important objectives.  "First, at the commencement of a class action, ascertainability and a clear class definition allow potential class members to identify themselves for purposes of opting out of a class."  Carrera, 727 F.3d at 307.  "Second, it ensures that a defendant's rights are protected by the class action mechanism."  Id.  "Third, it ensures that the parties can identify class members in a manner consistent with the efficiencies of a class action."  Id.  "If a class cannot be ascertained in an economical and 'administratively feasible' manner, significant benefits of a class action are lost."  Id. (citing Marcus, 687 F.3d at 593-94).

9

As noted in this Court's June 26, 2014 Opinion, in recent years the Third Circuit has emphasized the importance of ascertainability with respect to classes certified under Rule 23(b)(3). In Marcus, the claim was that Bridgestone "run-flat tires" were defective because they were highly susceptible to flats, could not be repaired but only replaced, and were expensive. Marcus, 687 F.3d at 588. The district court certified a class of current and former owners and lessees of BMW vehicles equipped with Bridgestone's run-flat tires whose tires had gone flat and been replaced. Id. at 590. On appeal, the Third Circuit noted BMW's arguments that it did not have records of which cars were fitted with run-flat tires, that some customers may have changed tires without BMW's knowledge, and that BMW would not have known which customers experienced flat tires. Id. at 593-94. The Third Circuit rejected the idea that having vehicle owners "submit affidavits that their [run-flat tires] have gone flat and been replaced" would be sufficient for ascertaining class membership because it would be based only on "potential class members' say so." Id. at 594. "Forcing BMW and Bridgestone to accept as true absent persons' declarations that they are members of the class, without further indicia of reliability, would have serious due process implications." Id.

In Carrera, the Third Circuit, relying on Marcus, vacated the certification of a class defined as all consumers who bought

WeightSmart, a dietary supplement, in Florida.  727 F.3d at 304.
The plaintiff had alleged on behalf of a putative class that the
defendant, Bayer, falsely claimed the supplement enhanced
metabolism, but the plaintiff could not satisfy the
ascertainability standard because class members were unlikely to
have documentary proof of purchase, such as packaging or
receipts, and Bayer had no list of purchasers because it did not
sell directly to consumers.  Id.  The plaintiff suggested that
class members could submit affidavits attesting to their
purchase of the supplement, and also proposed a mechanism for
screening the affidavits to identify potentially fraudulent
claims, but the Third Circuit nonetheless concluded that the
plaintiff had not demonstrated ascertainability.  Id. at 308,
311.

     In so finding, the Third Circuit stated that the "method of
determining whether someone is in the class must be
'administratively feasible.'"  727 F.3d at 307.
"'Administrative feasibility means that identifying class
members is a manageable process that does not require much, if
any, individual factual inquiry.'"  Id. at 307-08 (internal
citation omitted).  The Third Circuit further stated that "to
satisfy ascertainability as it relates to proof of class
membership, the plaintiff must demonstrate his purported method
for ascertaining class members is reliable and administratively

11

feasible, and permits a defendant to challenge the evidence used
to prove class membership." 727 F.3d at 308. The model for
screening affidavits proposed by the plaintiff was not specific
to the case and, even if it had been specific, there was no way
to determine the reliability of such a model. Id. at 311.

    In Hayes, the Third Circuit again vacated the certification
of a class of consumers. In Hayes, Sam's Club offered extended
warranties for various items in the store, which warranties did
not cover "as-is" items unless such items still had their
manufacturer's original warranties, were "last one" items that
were sealed and brand-new, or were display items. 725 F.3d at
352.[4] The district court certified a class of consumers who
purchased extended warranties to cover "as-is" products, but
excluded from the class those consumers whose "as-is" products
were covered by the manufacturer's warranty or were "last one"
items. Id. at 353.

    The Third Circuit found that the plaintiff failed to
demonstrate the ascertainability of the class. Even though the
defendant failed to keep records of who purchased "as-is" items,
which hindered the plaintiff's ability to bring a class action,

---

[4] Items could be designated "as is" for a number of reasons,
including (1) display items, which were removed from their
packaging to show to members; (2) items which were purchased and
then returned; (3) items that were "last one" products that
Sam's Club wanted to clear out; or (4) items that were damaged
in-Club. Hayes, 725 F.3d at 325.

the Third Circuit emphasized that the plaintiff nonetheless must demonstrate that the requirements of Rule 23 are met.  Id. at 356.  The Third Circuit stated that a plaintiff does not meet his burden of showing by a preponderance of the evidence that there is a reliable and administratively feasible method for ascertaining the class when "the only proof of class membership is the say-so of putative class members or if ascertaining the class requires extensive and individualized fact-finding."  Id.

Subsequent to the briefing on Plaintiffs' renewed motion for class certification, the Third Circuit issued an additional opinion regarding ascertainability.  In Byrd, the plaintiffs entered into a lease agreement to rent a laptop computer from the defendant, a franchisee of Aaron's, Inc., and subsequently learned that the defendant, without the plaintiffs' knowledge, had installed spyware that collected screenshots, keystrokes, and webcam images from the computer and its users.  Byrd, 784 F.3d at 159.  The plaintiffs brought a class action complaint alleging violations of and conspiracy to violate the Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2511, as well as common law invasion of privacy and aiding and abetting.  Id. The plaintiffs sought to certify classes of persons who leased and/or purchased computers from Aaron's, Inc. or an Aaron's, Inc. franchisee, and their household members, on whose computers

spyware was installed and activated without consent.  Id. at
160.

The Third Circuit in Byrd provided a thorough explanation
of the ascertainability requirement by summarizing its holdings
in Marcus, Hayes, and Carrera.  Although the district court had
concluded that the proposed classes were not ascertainable, the
Third Circuit reversed for a number of reasons, including that
the lower court misstated and applied the wrong law governing
ascertainability by conflating class definition standards with
the ascertainability requirement.  Id. at 165-66.  Additionally,
while the district court found that the proposed classes were
not ascertainable because they did not encompass all individuals
whose information had been surreptitiously gathered by Aaron's
franchisees, the Third Circuit found this to be erroneous
because "[t]he ascertainability standard is neither designed nor
intended to force all potential plaintiffs who may have been
harmed in different ways by a particular defendant to be
included in the class in order for the class to be certified."
Id. at 167.  The Third Circuit also found error in the district
court's conclusion that the proposed classes were not
ascertainable because they were "overly broad" and included
persons who had the spyware installed but such spyware was never
activated.  Id. at 168.  The Third Circuit noted that "the

14

District Court's analysis regarding overbreadth was really identifying a potential predominance problem." Id.

Finally, and most relevant to the present case, the Third Circuit in Byrd concluded that the proposed classes consisting of "owners" and "lessees" were ascertainable because there were "objective records" that could "readily identify" the class members, because Aaron's records revealed the computers upon which the spyware was activated and the identity of the customer who leased or purchased each computer. Id. at 169. Furthermore, although the class definitions also included "household members" of the lessees and owners of laptop computers, the Third Circuit found that such household members were ascertainable because they could submit a form attesting to their status in the putative class, and the forms could then be reconciled against the already-known addresses of owners and lessees as well as additional public records. Id. at 171.

IV.  <u>DISCUSSION</u>

   A.   **Plaintiffs' Proposed Method For Ascertaining Class Members**

In their renewed motion for class certification, Plaintiffs attempt to limit the application of Carrera to the facts of that case. Plaintiffs note that in Carrera, the named plaintiff could not recall the details of his purchase of the dietary supplement at issue, whereas Plaintiffs in this case testified

15

at their depositions that they purchased Skinnygirl Margarita within the class period.  (Br. in Supp. of Pls.' Renewed Mot. for Class Certification [Doc. No. 199-1] (hereafter, "Pls.' Br.") 5.)  Plaintiffs also cite Judge Ambro's dissenting opinion in connection with the Third Circuit's denial of en banc review in Carrera, arguing that the Third Circuit "did not mean to nullify laws like the New Jersey Consumer Fraud Act in the context of low-value disposable products by making it impossible for consumers to bring a class action[.]"  (Id. at 6.)

Additionally, to address any concerns about the feasibility of maintaining a class action, Plaintiffs now submit the Declaration of Steven Weisbrot, Executive Vice President at the class action notice and claims administration firm, Angeion Group, LLC, in which Mr. Weisbrot details a claim submission process to identify class members in this matter.  Mr. Weisbrot represents that he reviewed the proposed class definitions, the pleadings, and relevant documents and is "confident that the parties (both Plaintiffs and Defendants) working with a class action claims administration firm, can develop and will implement a reliable and administratively feasible method to ascertain individual class members[.]"  (Decl. of Steven Weisbrot [Doc. No. 199-2] (hereafter, "Weisbrot Decl.") ¶¶ 5, 6) (emphasis in original).

16

According to the Declaration, the screening method will involve three levels of claims validation to reduce the likelihood that individuals who submit fraudulent claims will be included in the class.  First, proposed class members will be asked to provide a claim form and receipt for purchase of Skinnygirl Margarita.  (Weisbrot Decl. ¶ 9.)  The claims of those who have a receipt for purchase of Skinnygirl Margarita within the class period will be accepted as valid.  (Id.)

In the absence of a receipt, prospective class members will be afforded the opportunity to submit a sworn affidavit setting forth the dates on which they purchased Skinnygirl Margarita, the state of purchase, the retailer, the approximate amount paid for the product, and a description of the bottle they purchased. (Id. ¶ 10.)  If the claimant provides an inaccurate description of the bottle, the claim will be rejected.  (Id. ¶¶ 13, 14.)  If a potential claimant correctly describes the bottle, the claim will then be further screened to determine whether the retailer identified by the claimant was a retailer who sold the product, whether the retailer is in fact located in the location identified by the claimant, and whether the amount paid was outside of the normal range of prices.  (Id. ¶ 15.)[5]  If the

---

[5] Additionally, if a claim is flagged, a claims administrator will purportedly check whether the claimant has commented about Skinnygirl Margarita on Defendants' social media pages or sent an e-mail to Defendants.  (Weisbrot Decl. ¶ 18.)

information provided by the claimant is not valid, the claim will be rejected.

At the third level of review, all claims will be reviewed by "sophisticated and state-of-the-art data matching technologies that identify patterns of duplication[.]" (Id. ¶ 19.) If claims are filed on-line, the review techniques include analysis of all submissions based on filing time, filing time frequency, filing location, claimant address and purchase location and source data, as well as "utilization of human entry authentication: 'captcha'."[6] (Id. ¶ 20.) If claims are submitted on paper, each claim form will have a unique claim identifier and will be imaged and machine read. (Id. ¶ 21.) "All duplicates to any pre-issued claim identifier will be flagged for fraud review and addressed in a one-off basis[.]" (Id.) For any of the claims that are flagged, the claims administrator will send rejection letters to those claimants and advise the claimants of their right to have the claims reviewed. (Id. ¶ 22.)

Plaintiffs also argue that Defendants' due process rights are adequately protected, regardless of the process for determining class membership. (Pls.' Br. 15.) Specifically,

---

[6] Although Mr. Weisbrot does not define or explain "captcha," the Court understands this to be a program that would require entry of a code that appears on a website in distorted text. http://www.captcha.net.

Plaintiffs contend that the damages in this case will not be determined from claimants' proofs of purchase, but rather from Defendants' total sales.  Damages can either be based on the purchase price of a bottle of Skinnygirl Margarita, or on the premium customers paid for what they believed was an "all natural" product.  Regardless of which theory of damages applies, according to Plaintiffs, Defendants' liability will be based on the total number of bottles of Skinnygirl Margarita sold during the class period, which can purportedly be determined from objectively quantifiable sales data and does not depend on the number of claims submitted.

### B.  Defendants' Opposition

The SGC Defendants contend that nothing has changed since the Court's prior denial of class certification, and the present motion should be denied for the reasons already expressed in the Court's Opinion on this issue.  According to the SGC Defendants, the controlling law of this Circuit is set forth in <u>Marcus</u>, <u>Hayes</u>, and <u>Carrera</u>, and these cases apply despite Plaintiffs' efforts to distinguish or limit them.  (Opp. of Def. SGC Global LLC (Erroneously Sued as SGC Global, L.L.C. and Skinny Girl Cocktails, L.L.C.) to Pls.' Renewed Mot. for Class Certification [Doc. No. 205] (hereafter, "SGC Defs.' Br.") at 20-27.)  The SGC Defendants also challenge the Weisbrot Declaration, arguing that it is merely a "repackaged" declaration that is not specific to

19

this case, and that Plaintiffs have no proof that Mr. Weisbrot's method is reliable. (Id. at 28, 34.) The SGC Defendants note that Mr. Weisbrot's method has only been used in the context of settled class actions, and he has no experience in ascertaining class membership in litigated disputes. (Id. at 31.)

Defendant Frankel's opposition raises many of the same concerns. Defendant Frankel argues that the method proposed in the Weisbrot Declaration is based only on the "say so" of putative class members, and that there is not "one shred of evidence in the record establishing that Weisbrot's proposed methodology is likely to be successful, or that class members can be identified without individual fact finding or mini-trials." (Def. Bethenny Frankel's Opp. to Pls.' Renewed Mot. for Class Certification [Doc. No. 206] (hereafter, "Frankel's Br.") at 5.) Defendant Frankel highlights the flaws with the first and second levels of review proposed in Mr. Weisbrot's model, citing Mr. Weisbrot's deposition testimony wherein he concedes that some fraudulent claims could pass through screening. (Id. at 6-10.) Furthermore, Defendant Frankel notes that the proposed methodology does not provide Defendants a means to challenge the evidence short of individual mini-trials. (Id. at 12, 16.)[7]

_____

[7] Defendant Frankel also asserts that the proposed screening method would result in an over-inclusive class, because this

The Beam Defendants argue that Plaintiffs' motion should be denied for the same reasons previously articulated in the Court's June 26, 2014 Opinion, noting that Plaintiffs offer nothing new in their renewed motion.  The Beam Defendants express concern that potential class members will not accurately recall the details of their alleged purchases, such as the date of purchase, which is purportedly relevant due to Beam's

---

case only involves consumers of Skinnygirl Margarita who purchased the beverage product because it was purportedly "all natural," whereas consumers might have purchased the product for a host of other reasons, including the taste, the low-calorie content, or the appearance of the bottle.  (Frankel's Br. 16-19.)  However, the Court does not consider whether a class is overly inclusive at the ascertainability stage.  Byrd, 784 F.3d at 167-68.  In Langendorf v. Skinnygirl Cocktails, LLC, --- F.R.D. ---, 2014 WL 5487670, at *2 n.1 (N.D. Ill. Oct. 30, 2014), the court considered the various reasons consumers might have purchased Skinnygirl Margarita in the context of predominance rather than ascertainability.  Id. at *5-6.  Similarly, in Weiner v. Snapple Beverage Corp., No. 07-Civ-8742, 2010 WL 3119452, at *11 (S.D.N.Y. Aug. 5, 2010), the court found that because of the various reasons a consumer might purchase Snapple other than its "All Natural" label, the predominance requirement under Fed. R. Civ. P. 23(b)(3) could not be satisfied.  The Court also notes that in Rapcinsky v. Skinnygirl Cocktails, L.L.C., No. 11-Civ-6546, 2013 WL 93636, at *8 (S.D.N.Y. Jan. 9, 2013), the court considered the reasons the named plaintiff purchased Skinnygirl Margarita in the context of typicality under Fed. R. Civ. P. 23(a), finding that the named plaintiff's claims were not typical because he admitted he did not purchase the beverage product for its "all natural" characteristics.  Here, if Plaintiffs could clear the ascertainability hurdle, they would then have to demonstrate that class members purchased Skinnygirl Margarita because of its "all natural" characteristics before obtaining class certification.  However, the Court does not consider the reasons a consumer purchased Skinnygirl Margarita in deciding ascertainability.

acquisition of the Skinnygirl Margarita trademark and related assets in March of 2011. (Beam's Opp. to Pls.' Renewed Mot. for Class Certification [Doc. No. 207] (hereafter, "Beam's Br.") at 13.) The Beam Defendants contend that they would not have any liability for the sale and marketing of Skinnygirl Margarita prior to March 17, 2011, and thus an affidavit stating only that a claimant purchased Skinnygirl Margarita within the class period would not be sufficient. (Id. at 14.) Like the other defendants, the Beam Defendants highlight the problems with the methodology proposed by Mr. Weisbrot, the likelihood that such process would do little to weed out fraudulent or inaccurate claims, and the individualized fact-finding as to each affidavit submitted that would be necessary to assess claim validity. (Id. at 16-18.)

### C.  Analysis

Plaintiffs' present motion raises three primary arguments, none of which convinces the Court that the putative Classes in this case are ascertainable. They first attempt to distinguish Marcus, Hayes, and Carrera; they next assert that they meet the requirements of ascertainability identified in Carrera; and they then contend that identification of class members is irrelevant to Defendants' due process rights because Defendants' liability will be fixed irrespective of the number of class members.

The only new information presented at this time is the
Declaration of Steven Weisbrot.  Although Plaintiffs had
presented a declaration from Mr. Weisbrot with their reply brief
on their prior motion for class certification, the declaration
had been prepared for a different case and was not specific to
the case before this Court.  The Weisbrot Declaration submitted
on the renewed motion specifically addresses a method of
identifying purchasers of Skinnygirl Margarita during the
relevant time frame.

### 1.   Plaintiffs' Efforts to Distinguish Third Circuit Precedent

First, Plaintiffs attempt to distinguish Marcus, Hayes, and
Carrera on the facts and then argue that these cases should not
be construed so as to preclude a plaintiff from bringing
consumer class actions for low-value products.  The Court
already conducted an extensive analysis of the Third Circuit
case law and concluded that these cases are binding on this
Court.  Plaintiffs' efforts to distinguish Marcus, Hayes, and
Carrera at this time are unavailing.  Moreover, Plaintiffs fail
to identify any new case law that would alter the Court's prior
findings on the issue of ascertainability.[8]

---

[8] Although the Third Circuit has since issued another opinion
addressing ascertainability, it only further explained and
affirmed the standard articulated in Marcus, Hayes and Carrera.
See generally Byrd, 784 F.3d at 163-64.  Notably, the Third
Circuit did not limit Carrera to the facts of that case, but

In <u>Hayes</u> and <u>Marcus</u>, as Plaintiffs correctly note,
membership in the putative classes did not merely require a
customer to purchase a product in a certain time period, which
is all that is required in the present case.  In this case, the
putative class members are simply purchasers of Skinnygirl
Margarita between August of 2009 and September 6, 2011.  The
class members in <u>Hayes</u>, by contrast, were not just purchasers of
an extended service plan for "as-is" products during a defined
time period, but the "as-is" products could not be "last one"
items or still have the manufacturer's warranty.  In <u>Marcus</u>, the
class members were not just purchasers of BMWs within the
relevant time period, but such purchasers also had to have cars
equipped with run-flat tires that had gone flat and had been
replaced.

Despite the factual distinctions of <u>Hayes</u> and <u>Marcus</u>, the
Third Circuit's concern that membership in the class cannot be
ascertained other than the "say so" of proposed class members
remains applicable here.  As the SGC Defendants note, "[w]hether
the 'say so' of each putative class member concerns solely his
or her purchase of the product at issue, or whether it concerns
some other criterion of class membership, is a distinction
without a difference."  (SGC Defs.' Br. 23.)  Plaintiffs have

---

instead used the standards articulated in <u>Carrera</u> as a guidepost
in reviewing the district court's analysis of ascertainability.

not proposed an objective way of identifying class members,
suggesting only the submission of claim forms by putative class
members without any verifiable records or documents to
corroborate the claims.  In this regard, the concerns of
ascertainability set forth in <u>Hayes</u> and <u>Marcus</u> are equally
applicable in this case.

Plaintiffs' efforts to distinguish <u>Carrera</u> are likewise
unavailing.  The named plaintiff in <u>Carrera</u> "was unable to
remember when he purchased WeightSmart and confused WeightSmart
with other products that are not part of th[e] litigation."
<u>Carrera</u>, 727 F.3d at 309 n.5.  Plaintiffs contend that unlike
the <u>Carrera</u> plaintiff, they know they purchased Skinnygirl
Margarita within the class period and did not confuse the
beverage because it was a unique product.  However, like the
plaintiff in <u>Carrera</u>, the named plaintiffs in this case have
demonstrated difficulty remembering the details of their
purchases, and therefore <u>Carrera</u> is not as readily
distinguishable on its facts as Plaintiffs argue.[9]

---

[9] Defendants point to the testimony of the named Plaintiffs to
demonstrate that they do not remember details of their purchases
of Skinnygirl Margarita.  For example, Ms. Stewart testified
that she could not remember the exact price of the first bottle
of Skinnygirl Margarita that she purchased.  (Decl. of Patricia
A. Millett in Supp. of Bethenny Frankel's Br. in Opp. to Pls.'
Renewed Mot. for Class Certification [Doc. No. 206-1]
(hereafter, "Millett Decl."), Ex. A at 181:3-10.)  Ms. Lamicella
testified that she could not recall the first time she purchased
a bottle of Skinnygirl Margarita but thought it was in 2010,

Furthermore, despite Plaintiffs' attempts to limit <u>Carrera</u> to the facts, the Court does not read the Third Circuit's opinion so narrowly.  In <u>Carrera</u>, the Third Circuit was primarily concerned with a defendant's ability to challenge class membership.  <u>Id.</u> at 309.  The Third Circuit noted that a defendant's ability to challenge class membership was highlighted by the facts of that case, because the named plaintiff could not remember the details of his purchase, but it did not limit its decision to cases in which the named plaintiff cannot recall the details of his or her purchase.  <u>See id.</u>[10]

---

even though the Second Amended Complaint states that Ms. Lamicella first purchased the beverage product in May 2011. (Millett Decl., Ex. B at 172:5-15; Second Am. Compl. ¶ 8.)  Ms. Lamicella also could not remember where she purchased her first bottle of Skinnygirl Margarita, stating that it was one of two stores but she did not recall which one.  (Millet Decl., Ex. B at 173:20-25.)  Ms. Belo testified that she could not recall an exact date when she first purchased Skinnygirl Margarita and could only estimate that it was two or three years prior to her deposition.  (Millet Decl., Ex. C at 216:4-13.)  She also could not recall where she first purchased Skinnygirl Margarita, how much she paid for the bottle, or the color of the bottle. (<u>Id.</u> at 216:17-217:3; 220:6-9; 224:18-21; 228:15-229:7.)  Additionally, Ms. Belo had no "concrete recollections" about her second purchase of Skinnygirl Margarita.  (<u>Id.</u> at 235:9-11.)

[10] In fact, the Third Circuit stated that "[i]t would appear that the less reliable a class member's memory is, the more reliable any screening method would have to be."  727 F.3d at 311 n.9.  The Third Circuit did not indicate that it would permit the submission of "say so" affidavits when a claimant can accurately recall the details of his or her purchase, as such a process would nonetheless preclude a defendant's ability to challenge class membership.

26

The Third Circuit remanded to provide the plaintiff "the opportunity to submit a screening model specific to [the] case and prove how the model will be reliable and how it would allow [the defendant] to challenge the affidavits." Id. at 311.

As this Court already noted, under Carrera, Hayes and Marcus, a process requiring reliance on affidavits of putative class members as the primary method of ascertaining the members of the class "leaves Defendants without a suitable and fair method for challenging these individuals' purported membership in the class." (Op. [Doc. No. 187] at 35, June 26, 2014.) Plaintiffs' proposed method relies on the customers' "say so," which is not acceptable under the law of this Circuit.

In another effort to avoid the holding of Carrera, Plaintiffs argue that Carrera should be afforded a restrained reading because to read it more broadly would preclude class action consumer suits for low-value products. Several courts have criticized the Carrera decision as imposing too high of a burden on plaintiffs in such cases. See, e.g., Langendorf v. Skinnygirl Cocktails, LLC, --- F.R.D. ---, 2014 WL 5487670, at * 2 (N.D. Ill. Oct. 30, 2014); McCrary v. Elations Co., LLC, No. EDCV 13-00242, 2014 WL 1779243, at *8 (C.D. Cal. Jan. 13, 2014) ("Carerra eviscerates low purchase price consumer class actions in the Third Circuit. It appears that pursuant to Carerra in any case where the consumer does not have a verifiable record of

27

its purchase, such as a receipt, and the manufacturer or seller does not keep a record of buyers, Carrera prohibits certification of the class."). Even Judge Ambro, who authored the Marcus decision, has expressed concern that the decision in Carrera takes the ascertainability requirement "too far." Carrera v. Bayer Corp., No. 12-2621, 2014 WL 3887938, at *1 (3d Cir. May 2, 2014)("Our Court's opinion in Carrera gives the impression to many that we now carry that requirement too far. Several amici . . . warn that Carrera threatens the viability of the low-value consumer class action 'that necessitated Rule 23 in the first instance.'") (Ambro, J., dissenting).[11]

This Court recognizes that the decisions in Carrera, Marcus and Hayes set a high bar for plaintiffs seeking class certification in low-value consumer class actions. However, these are precedential opinions, and the standards set forth therein must be followed by this Court.

### 2.    The Two Elements of Ascertainability Required Under Third Circuit Law

Ascertainability consists of "two important elements": (1) "the class must be defined with reference to objective

---

[11] Additionally, in a concurring opinion in Byrd, Judge Rendell stated that "the time has come to do away with" the Third Circuit's heightened ascertainability requirement, noting that it "defies clarification," "narrows the availability of class actions in a way that the drafters of Rule 23 could not have intended," and bars most low-value consumer class actions. Byrd, 784 F.3d at 172 (Rendell, J., concurring).

criteria[;]" and (2) "there must be a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." Hayes, 725 F.3d at 355 (citing Marcus, 687 F.3d at 593-94).

Plaintiffs have satisfied the first requirement of ascertainability, as the Court finds that the proposed Classes are defined with reference to objective criteria.  Each of the Classes requires only purchase of Skinnygirl Margarita in one of the delineated states within a particular time period and lack of association with defendants or the Court, which are objective descriptions of prospective class members.

Plaintiffs have not, however, offered a suitable method by which the Court could identify class members with any reliability.  Defendants represent that they have no records to specifically identify the class members because they did not sell Skinnygirl Margarita directly to consumers.  Plaintiffs may not rely on the lack of Defendants' recordkeeping in seeking class certification, as Plaintiffs have the burden of fulfilling the requirements of Rule 23.  Hayes, 725 F.3d at 356. Plaintiffs argue that the screening method described in the Weisbrot Declaration will ensure that Defendants pay claims based only on reliable submissions.  The Court finds that the process proposed by Mr. Weisbrot does not demonstrate a reliable

29

and administratively feasible mechanism for ascertaining class members.[12]

With respect to the first level of review, Mr. Weisbrot proposes that any claims submitted with a receipt of purchase will be accepted as valid and will be subjected only to further review at the third level.  However, it is unlikely that many, if any, class members have retained a receipt for their purchases of Skinnygirl Margarita approximately four to six years ago.  As noted by Defendant Frankel, none of the three named plaintiffs has retained a receipt for their purchases, and Mr. Weisbrot admitted in his deposition that the majority of class members would not have a receipt evidencing their purchase of the beverage product.  (Frankel's Br. at 9; Decl. of Michael A. Samalin in Supp. of Beam's Opp. to Pls.' Renewed Mot. for Class Certification [Doc. No. 207-1] (hereafter, "Samalin Decl."), Ex. A at 141:5-8.)  This first level of review is therefore likely to provide little, if any, assistance in identifying actual purchasers of Skinnygirl Margarita.

Moreover, even assuming that some class members retained their receipts, acceptance of receipts as evidence of a purchase

---

[12] Frankel and the Beam Defendants note that Plaintiffs did not timely identify Mr. Weisbrot as an expert.  No party moves to strike his declaration or preclude him from serving as an expert in this matter.  As such, the Court considers the Weisbrot Declaration in deciding the present motion.

would not necessarily prevent the submission of fraudulent claims.  In this regard, Mr. Weisbrot testified at his deposition that his proposed methodology could not detect if two people submitted the same receipt in support of separate claims, and that the methodology assumes that people will not fabricate or create a receipt to support a claim.  (Samalin Decl., Ex. A at 144:2-17, 144:32-145:1.)  Furthermore, Mr. Weisbrot concedes that even possession of a receipt does not necessarily demonstrate that the claimant purchased a bottle of Skinnygirl Margarita, as the person "could have come into possession of the receipt by happenstance."  (Weisbrot Decl. ¶ 9.)

Plaintiffs presumably believe that subjecting claims supported by receipts to another level of review will screen out fraudulent claims.  According to Mr. Weisbrot, the third level of review "will include sophisticated and state-of-the-art data matching technologies that identify patterns of duplication[.]" (Weisbrot Decl. ¶ 19.)  However, as noted by the Beam Defendants, the third level of review is tailored to safeguard against fraudulent duplication claims, such as where a claimant attempts to file multiple claims for a single purchase, or a computer hacker attempts to submit hundreds of claims.  (Beam's Br. at 11; Samalin Decl., Ex. A at 210:12-211:24.)  The proposed methodology would not detect those instances in which multiple claimants file claims based on one receipt, or where a claimant

31

has fabricated a receipt to support a fraudulent claim, or where a claimant happens to have a receipt but never actually purchased a bottle of Skinnygirl Margarita.  Plaintiffs have not presented a mechanism to screen out these fraudulent types of claims, and as such have not demonstrated that their proposed methodology is reliable.

The second level of review described in the Weisbrot Declaration -- which requires claimants to offer details concerning their purchase of Skinnygirl Margarita so as to provide additional "indicia of reliability" -- also fails because most claimants will likely be unable to provide the details necessary to substantiate their claims.  The Court previously noted that it is "unlikely that putative class members will accurately remember every Skinnygirl Margarita purchase they made during the class period, let alone where these purchases were made and the prices they paid each time." (Op. [Doc. No. 187] at 20-21.)

The named plaintiffs concede in their reply brief that they "could not recall the specific dates, times and locations of their purchases," but they argue that their lack of such information is "beside the point."  (Reply Br. in Supp. of Pls.' Renewed Mot. for Class Certification [Doc. No. 212] at 5.) Plaintiffs' inability to remember the specifics of their purchases is not "beside the point," for it highlights a major

32

flaw in Plaintiffs' proposed claim process. Mr. Weisbrot's screening method purportedly filters out fraudulent claims by requiring claimants to provide sworn affidavits identifying, inter alia, the date(s) on which the product was purchased, the location at which the product was purchased, and the approximate amount paid for the product. (Weisbrot Decl. ¶ 10 and Ex. A.) Thus, the specific details surrounding a claimant's purchase of Skinnygirl Margarita are necessary to validate a claim. The Court is left to wonder how the named plaintiffs, or any claimant, can complete an affidavit attesting under oath to the details of their purchases when they cannot remember such specifics.[13] Proposed class members would either be unable to complete a claim, would provide only general information that would not provide the "indicia of reliability" needed to validate their claim, would speculate as to the information requested, or could possibly make up the information. The Court thus finds that the "fraud prevention screening" methodology proposed in the Weisbrot Declaration is not a reliable, workable process for identifying class members.

---

[13] Even Plaintiffs acknowledge that requiring a claimant to recite the specific dates, times and locations of their purchases requires "impossibly detailed recollection." (Pls.' Reply Br. 5.) Plaintiffs argue that such details need not be provided because they are not a prerequisite for class membership, but such details are necessary to ascertain class members under the methodology proposed by Plaintiffs.

Plaintiffs' proposed methodology is also lacking in details about how the "fraud prevention screening" factors will be evaluated.  Mr. Weisbrot proposes that claims could be screened for information concerning dates of purchase, location of purchase, and approximate price, but he does not explain which answers would be acceptable and how many "correct" answers must be provided for a claim to pass to the next level of review. For instance, it is unclear (1) whether a purchaser must recall the exact date of purchase versus a more general time frame;[14] (2) an acceptable range of prices; and (3) whether all of the criteria must be accurately identified or, if not, the acceptable number of criteria that must be correctly identified for a claim to advance to the next level of review.[15]

Similarly, with respect to the threshold criterion of bottle identification, Mr. Weisbrot asserts that claimants could be asked to identify a bottle from pictographs of three sizes,

---

[14] If the purchaser does not recall the exact date of purchase, there is no way to assure that the purchase was made during the class period.  In this regard, if the purchaser recalls that he or she bought Skinnygirl Margarita in 2011, but cannot recall whether the purchase was prior to or after September 6, 2011, then it will be impossible to verify whether he or she is a class member.  The SGC and Beam Defendants also argue that an exact date of purchase in 2011 is crucial in determining their liability in light of Beam's acquisition of the Skinnygirl business in March of 2011.

[15] For example, if a purchaser recalls the date of purchase and location of purchase, but inaccurately identifies the purchase price, it is unclear whether this claim will be rejected.

but merely choosing the correct size bottle hardly ensures that
a claimant purchased the product.  Mr. Weisbrot conceded at his
deposition that a simple internet search could produce the
information necessary to choose the correct bottle from the
pictograph.  (Samalin Decl., Ex. A at 106:21-108:5.)

    Mr. Weisbrot alternatively suggests that class members
could be asked to describe the features of the bottle, but his
methodology requires claimants to provide subjective responses,
and the level of detail that would suffice is unclear.  A
claimant could, for instance, describe the size, material or
color of the bottle, the logo, and/or the type of cap on the
bottle.  The Court is unclear as to the result when a claimant
accurately describes one characteristic (e.g., the size of the
bottle) but inaccurately describes another characteristic (e.g.,
the color of the bottle).

    Plaintiffs further propose cross-referencing claims with
social media activity and e-mail communications as another means
of providing reliability, but the Court already rejected this
argument.  Specifically, the Court stated that "Plaintiffs have
not presented any statistical evidence demonstrating what
percentage of consumers who purchased Skinnygirl Margarita were
likely to either e-mail Defendants directly or contact (or
"like") Defendants through Facebook."  (Op. [Doc. No. 187] at
36.)  Further, the Court stated that "[t]he inherent problem

35

with Plaintiffs' suggested use of 'cross-checking' social media
and e-mail records is that such Facebook and e-mail records,
admittedly, only identify some unknown, unspecified portion of
the putative class and may very well include individuals who
never bought the product and in fact are not members of the
class." (Id. at 37.)

Plaintiffs have not provided the Court with any additional
information concerning the proposed use of social media or e-
mail correspondence to warrant a different finding at this time.
Mr. Weisbrot agreed at his deposition that people who submitted
comments on Facebook are merely a fraction of the people
eligible for membership in the putative class. (Samalin Decl.,
Ex. A at 120:17-25.) Likewise, Mr. Weisbrot conceded that he
had no data concerning the percentage of consumers who purchased
Skinnygirl Margarita during the class period and were likely to
e-mail the defendants. (Id. at 121:1-8.) Plaintiffs have done
nothing to address the Court's concern that "at best" cross-
checking claims against social media and e-mail records "can
only be used to screen a modest percentage of the affidavits
that would be submitted." (Op. [Doc. No. 187] at 36.) As such,
the Court finds Plaintiffs' proposed cross-referencing
methodology of limited utility in screening out fraudulent
claims.

In sum, the method proposed in the Weisbrot Declaration is predicated on the submission of affidavits by putative class members which cannot be verified.  Plaintiffs' proposed method purports to add reliability by requiring a claimant to provide details of their purported purchase of Skinnygirl Margarita, but many of these identifiers -- including a description of the bottle, a date of purchase within the class period, a location of purchase[16] or a purchase price -- could be readily obtained from public sources, such as an internet search or the class notice that would be disseminated if the Classes were certified, and would do little to assure that the claimants actually purchased Skinnygirl Margarita.  Moreover, claimants would be unlikely to recall other specific details that would be required to verify a claim, such as the retailer at which they purchased Skinnygirl Margarita or the date of purchase.  Therefore, Plaintiffs' proposed reliance on affidavits alone, without any objective records to identify class members or a method to weed out unreliable affidavits, fails to satisfy the ascertainability requirement under the law of this Circuit.

---

[16] The level of detail concerning the geographic location of purchase is unclear.  It appears that a claimant might only have to identify a state of purchase, rather than a specific retailer.  (Samalin Decl., Ex. A at 165:18-22.)  If a claimant must only identify a state, then such information can be obtained by reviewing the class definition as posted in the class notice.

### 3.   Plaintiffs Have Not Demonstrated that the Method Proposed in the Weisbrot Declaration is Reliable

Even assuming that the model proposed by Mr. Weisbrot is somehow workable, Plaintiffs fail to provide sufficient assurance that the process is reliable.  "A plaintiff may not merely propose a method of ascertaining a class without any evidentiary support that the method will be successful." Carrera, 727 F.3d at 306-07.  "Mere assurances that a model can screen out unreliable affidavits [are] insufficient."  Id. at 311-12.

Plaintiffs contend that the methodology set forth in the Weisbrot Declaration has been approved and used in other cases. (Pls.' Reply Br. at 7.)  However, Mr. Weisbrot testified that his methodology has only been utilized in class actions that are already settled.  (Samalin Decl., Ex. A at 86:18-87:9.)[17] Indeed, Mr. Weisbrot was unable to identify even one consumer class action in which the procedure identified in his declaration was used in a litigated class action, rather than one that was settled.  (Id.)

---

[17] As noted in Carrera, "[s]ettlement classes raise different certification issues than litigation classes.  Accordingly, we question whether the . . . proposals for identifying purchasers, made as part of a settlement . . . bear any relevance to the issue of ascertainability in this case."  Carrera, 727 F.3d at 308 n.4 (citation omitted).

Not only is there no information to demonstrate that Mr. Weisbrot's proposed model is reliable, but Mr. Weisbrot acknowledged in his deposition that his process may in fact be unreliable. (Id. at 99:14-19.) Mr. Weisbrot testified in this regard that "if it's someone's intention to beat the system, . . . they probably can do it." (Id. at 102:1-11.) The Court thus finds that Plaintiffs have not met their burden of demonstrating the reliability of their model. Under Carrera, Plaintiffs are required to provide evidentiary support that the method will be successful. Plaintiffs provide no actual evidence that their method is a reliable process to screen out fraudulent claims. Mr. Weisbrot's assurance that this process has worked in settled class action cases is insufficient to meet Plaintiffs' burden.

### 4. Defendants' Objectively Quantifiable Sales

Finally, the Court rejects Plaintiffs' argument that Defendants' due process rights are protected because the entire damages are purportedly objectively quantifiable and are not based on a claimant's proof of purchase. (Pls.' Br. 15.) This argument was raised and rejected in Carrera. In Carrera, the plaintiff argued that Bayer owed a refund for every bottle of WeightSmart that was sold because liability was not based on individual issues, and the affidavits concerning class membership would only be used to determine to whom to pay the refund and in what amount. Carrera, 727 F.3d at 309-10. As

39

such, according to the plaintiff, Bayer's total liability would remain the same regardless of whether false claims were submitted, and Bayer therefore "lacks an interest in challenging class membership." Id. at 310.  The Third Circuit stated that the plaintiff's focus on Bayer alone was misplaced, noting that "[i]t is unfair to absent class members if there is a significant likelihood their recovery will be diluted by fraudulent or inaccurate claims." Id.

The same concerns expressed by the Third Circuit apply in this case as well.  The ascertainability requirement not only seeks to protect a defendant's rights but is also aimed at protecting the rights of absent class members.  As discussed above, there is a possibility that the proposed method for ascertaining the class set forth in the Weisbrot Declaration will result in the submission of fraudulent claims.  The recovery of true class members could therefore be diluted by these fraudulent claims.  Thus, as in Carrera, Plaintiffs' focus only on Defendants in addressing ascertainability of the class is misplaced.  Plaintiffs have not provided the Court with a method to ensure that the rights of all class members, as well as the rights of Defendants, will be protected in this action.

40

**V.   <u>CONCLUSION</u>**

For the reasons set forth herein, Plaintiffs' renewed motion [Doc. No. 199] for class certification is denied.  An Order consistent with this Opinion will be entered.


Date: June 8, 2015                         <u>  s/ Noel L. Hillman        </u>
                                           NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey

41